Judge Marshall
delivered the Opinion of the Court.
Riley, having sold two small parcels of land, to Wiley, obtained a decree subjecting them to sale, for payment of the purchase money remaining due. Under this decree, both parcels of the land were sold, and, by direction of the purchaser, were conveyed to Riley, by the commissioner, whose deed was approved at the June term, 1829, of the Circuit Court.
In October, 1832, this court reversed the decree, because the Heirs of James Nichols, who were sued as non-residents, and whose title to one of tho tracts of land had been decreed to be conveyed, were not before *76 the court by actual or constructive service of process. This reversal was entered in the Circuit Court at its June term, 1833, when the cause was redocketed and continued.
When a decree is reversed, and the case remanded, and again on docket, the court below has the same power over it, as tho’ no decree had been rendered.
No notice, to any adverse party, is required, of a motion, exclusively upon matters apparent on the record, in a pending suit.— Whether, or not, afler the termination of the suit — quere.
At the succeeding February term (1834,) Wiley, without previous notice, moved the court to quash the sale and deed, for matter appearing on the face of the record. And on this motion, which was opposed by Riley’s counsel, the court, by its order and decree, quashed the sale, set aside the deed, and ordered the costs of the motion to be paid by Riley. For the reversal of which orders and decree, Riley prosecutes a writ of error.
The errors assigned, not only question the propriety of the decree upon its merits, but suggest that the court had no power to hear the motion after the proceedings which have been stated; and, also, that notice was necessary, if not to Riley, at least to the purchaser at the commissioner’s sale, and to Nichols’ Heirs, and to Gary, by whose assignment the bond of Nichols for the conveyance of one of the tracts had passed to Riley.
But we think that by the reversal of the decree, and the redocketing of the suit for further proceedings, the cause was placed in the same condition as if a final decree had not been pronounced, and the court revested with the same power over its previous proceedings.
Nor is there, in our opinion, any weight in the objection that there was no notice. The only parties interested in the validity of the sale, were in fact before the court. And by a general practice, founded in reason and sanctioned by the decisions of this court, a motion to quash, grounded exclusively upon matters apparent on the record, may be made without previous notice. Whether this rule would be applicable to a motion made at any indefinite period after the final determination of the proceeding on which the motion is founded, or to which it relates, need not now be decided. The present motion was made during the pendency of the principal suit, and when the proceeding to which it relates was in the power of the court.
A commissioner was directed to sell an estate, under a decree, for Com’wlth’s notes. lie reports, that “in pursuance of the decree,” he sold §-c. for so many “dollars” — not specifying the kind of money: held, that the reference to the decree may explain thej terms, and that (upon the face of the report, «without other evidence) it shall be intended that the sale was for the Bank notes,
The particular grounds on which the sale and deed •was set aside, are not stated in the bill of exceptions. It is however urged, on behalf of the defendant in error, that as the sale was ordered to be made for notes of the Bank of the Commonwealth, and from the report of the commissioner it appears to have been made for money, it is apparent that the sale was not in conformity with the decree, and that on this ground it was properly set aside. If the premises assumed in this argument were true, we should admit the conclusion as a legitimate consequence. But we do not think that, according to the fair import of the record, it does appear that the commissioner sold the land for money, technically so called. He does not say he sold for money: but that “ in pursuance of the decree, he proceeded to sell the two tracts” &c., having first advertised &c., “ and J. F. became the purchaser of each. The tan- “ yard tract, containing &c. sold for one hundred and “ fifty nine dollars, and the other tract for twenty three “ dollars and fifty cents, all on a credit of three months” &c. If the word dollars, as used in the report, necessarily imports specie dollars, then, it does appear from the report itself, that the sale was made for specie, and not for bank notes, as directed by the decree. But, although we admit that the word “ dollars,” (or u one hundred and fifty nine dollars,”) when used without explanation or reference, has no other import but specie dollars, we do not admit this import to be so fixed and inherent in the word itself, as to be incapable of variation or qualification, by other words connected with it, or by reference to something else which is evidently intended to explain and qualify it. On the contrary, common usage, which judges, as well as others, must understand and submit to, has rendered the import of this word variable, or has determined it to be so; and has made it designate, according to the apparent intention of him who uses it, a sum, either in specie, or in bank notes which represent or purport to represent specie. All that is required to justify the latter interpretation, is, that the intention to use the word in that sense shall be sufficiently made known — and it is immaterial wheth *78 er it is indicated by express words of qualification immediately succeeding or preceding the word dollars, or by necessary reference to such words, which are to be found somewhere else, or to circumstances which directly and unequivocally point out the intention.
If an execution comes to the hands of a sheriff, with an indorsement that bank notes will be taken in payment, and the sheriff make return, that, by virtue or in pursuance of that execution, he has sold a horse for one hundred dollars &c. it will not be understood that he sold the horse for specie dollars. But whatever the truth of the case may be, the return will be taken in connection with the indorsement, and by reference to that, the words one hundred dollars will be understood to express a sum in the bank notes for which he was authorized to sell, and not in specie, for which he was not authorized to sell. So, in the present case, although, if the commissioner in his report had made no reference to the decree, but merely stated that he had sold the land for one hundred and fifty nine dollars, it might have been understood that ho sold for specie dollars. Yet as these words, by which the price of the land is indicated, may express a sum in bank notes, and will be so understood, if there be sufficient evidence of an intention so to use them, and as the report refers expressly to the decree, (which directs the sale to be for bank notes) and the commissioner states that he sold in pursuance of the decree, we think there is sufficient evidence, prima facie, to show, that the words were used to express a sum in bank notes, and not in specie. The question is not whether in point of fact the land was sold for specie, but whether the report shows that it was sold for specie; and, construing the report as if the decree to which it refers were a part of it, we think the fair import of the whole, is, not that the land was sold for so many dollars in specie, but for so many dollars in the bank notes for which it was directed to be sold. We are fortified in this conclusion, by the fact that the report when made was approved by the court, and, so far as appears, without objection; whence we infer, that it was then understood as wc now understand it. We *79 cannot say, therefore, that it is apparent from the record that the sale was not in conformity with the decree in this respect.
A sale of land, made under a decree rendered when the holder of the legal title, and the assignor of the bond for the title, were no parties to the suit, is void, and will be quashed, on motion — and the comp’t pays the costs of the motion.
But, in our opinion, it is apparent from the record, that the sale of the tract of six acres, held by bond from Nichols, was void, because neither the Heirs of Nichols who appear to have had title to that tract, and whose title was decreed to be sold and conveyed, nor James Gary, the assignor of the bond on Nichols, were parties to the decree. For this cause the sale of that tract was properly quashed. It was also proper to order the costs of the motion to be paid by Riley.
But as no ground is perceived for quashing the sale of the other tract, called the tan-yard tract — therefore the said order and decree is reversed, and the cause remanfled for further proceedings, not inconsistent with this opinion.